Oh yes, oh yes, oh yes. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Thomas Welch presiding, along with Justice Judy Cates and Justice James Moore. The case this morning is number 519-304, Petroff v. Crown Castle USA, Inc. at all. Arguing for the appellant, Thomas Petroff, is Mr. Thomas Magg. Arguing for the appellees, Crown Castle USA, Inc. at all, is Mr. Ian Fisher. Before you begin, I'll review the format for this argument. Just as if you were in the courtroom in Mount Vernon, each side will have up to 20 minutes for your argument. The appellant will also have up to 5 minutes for rebuttal. You will see the timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember, no photographs and only the clerk of the court is permitted to record these proceedings today. Justice Welch? Has he announced the case? Yes. Counsel for the appellant may proceed. Counsel Magg? Thank you, Your Honor. May it please the court, counsel. My name is Thomas Magg. I represent Thomas Petroff as trustee of the Petroff Trust. We have today a contract case. There's a, in the lower court, the judge, trial court entered, granted a motion to dismiss under 2-619 in favor of the defendant, and instead of doing, denied my cross motion for summary judgment. As I don't believe the court has jurisdiction to reverse the denial of the summary judgment motion, we're only asking that the granting of the motion to dismiss be heard because I believe that's the procedural mechanism to perfect this appeal. The issue on appeal substantively. Excuse me. I don't understand that argument. If the order is vacated, wouldn't that also reverse the summary judgment? Yes. My point is I don't think this court can order the court to grant summary judgment. If you disagree, that's just my understanding of the law. Okay. I misunderstood. I'm sorry. Okay. I apologize. The issue, the substantive issue is a difference in the viewpoints of whether, which of two provisions of the contract control. Specifically, paragraph four of the lease, this is a lease for real estate on which cell phone power was built, obligates the defendant to reimburse the plaintiff within 30 days for any increase in real estate taxes or insurance premiums on the property. Paragraph four does not limit the cause or the nature of the increase in insurance or real estate taxes. This case only concerns real estate taxes, but there's no issue or argument about insurance. The record indicates the plaintiff's real estate taxes over the course of this means men up and that the defendant did not pay for all of the increase in the real estate taxes. Okay. I'm sorry, your honor. There's no speed. We're having trouble, I think, with the audio. Okay. Justice, you want to try that again? There's no dispute that the portion has been paid year to year for what the cell phone people believe is their relative increase. I believe that is correct, yes. Paragraph eight of the contract, specifically 8B as in boy, under defendant's argument, limits the liability only to increases caused by the improvements on the property. However, that is not a limitation on the amount that the defendants are obligated to pay. It is a separate category that they're required to pay. This fact that there may be some overlap doesn't limit the defendant's liability. Paragraph four is crystal clear. Notwithstanding the foregoing portions of the contract, the defendant's claim is that SSLP, the original contractee, shall reimburse to owner, owner being Patroff, within 30 days after the due date thereof, any increase in real estate taxes and insurance premium. Judge Rudolph found that paragraph controlled over that language and that this was a gross lease. A gross lease, of course, being a lease where the person leasing the property only pays rent, a lump sum. It's predetermined. But even under the defendant's interpretation, this lease is not a gross lease. This lease, even under the defendant's interpretation, is what's called a modified gross lease. Under a modified gross lease, in addition to the monthly rent, there's something else that is due. And even under the defendant's interpretation, the defendant is liable for some increase in the real estate tax. Thus, we know that this lease is not a gross lease. So, let me ask you this. Is it your contention that a gross lease, or in a gross lease, you only pay the rent? There can be no other fixed term? That appears to be the definition of a gross lease. Now, there are things called modified gross leases, which is what we think this is, where you pay certain sums in addition to the gross sum. But I agree that it appears that the law is a gross lease. You simply pay a lump sum each month. It's predetermined. But is that lump sum limited to rent? Could it be, for example, $10 toward gas or lights or something like that, as long as it's predetermined? As long as it's predetermined, a specific dollar amount, I think that would still be a gross lease. I don't think it matters how you apportion it. But in this case, when this lease was originally signed, neither of the parties knew how much the real estate taxes would go up. It was a foregone conclusion they would go up. They very seldom, if ever, go down, especially when you build things on real estate. I guess the party could have contracted for a specific amount to include it, anticipating that increase in real estate taxes. But instead of doing that, they simply entered into an agreement where the defendant paid for the increase in real estate taxes. Per paragraph four, the cause of that increase in real estate taxes is irrelevant. And it's there that the trial court erred in finding that Petroff was only entitled to an increase caused by the improvement as opposed to caused by any other factor. Okay. How do you know how the cell phone company has determined a payment over the years? I mean, this has been in effect since I think 1996, right? That sounds correct. Yes. And I recognize that you weren't, I think Peter Mag was the one handling this. And a large portion of it. Yes. So do you know how the parties have apportioned the amount to be paid every year over the years? It is my understanding that one or the other party called the tax assessor and simply got their opinion. I don't know that that's in the record, but that's my understanding of the practical, how it was done. Council, I have a question. The types of tax increases are different. I have identified three that I know of. One would be due to a change in value due to an increase in assessment. Another would be due to an increase in the tax and another would be due to an increase in the multiplier. How would those different types of tax increases be affected by those two clauses in the lease? Under paragraph four, I believe the defendant would be liable for all of it. Under paragraph eight, if that was the only portion of the contract that controlled, I think it would only be, I don't think an increase in the tax rate or the tax multiplier would be reimbursable necessarily. Although I don't think that we ultimately get to that issue because I don't know that the parties have really been an issue on that issue or those issues. It's simply been, the defendant believes that they paid for the increase in value of the property caused by the cell tower. The plaintiff thinks that they're obliged to pay everything else. Okay, thank you. I'll ask the same question of Apolline. Go ahead, you may proceed. Thank you, your honor. I think that pretty well sets forth the position of the plaintiff as to what this case is about. It's really not a complicated dispute. It's simply a question of law, contractual interpretation. Does the defendant owe for all increases in the real estate taxes as it sets forth in paragraph four? Or is the increase limited to only the increases caused by paragraph eight? It's plaintiff's position that four controls to the extent that there was any ambiguity or subsumed into paragraph four, we ask that the court reverse and remand for further proceedings. Thank you. Thank you, counsel. I have one last question, Justice Welch. Is there any dispute as to who wrote this lease? There seems to be some argument as to how we construe it against the drafter. It appears to be a form lease. It does appear to be a form lease. It is my understanding that this lease was presented to Mr. Petroff. I think to the extent the court has any concerns whether as to who wrote it, I agree it appears to be a form lease. That is something that the court could reverse and remand the trial court to make findings of fact on. Or I think the court can find based on its appearance to be a form lease that it was presented by the defendant, who I think the court can reasonably construe from the record is in the cellular tower business and would have such form leases. So the parties don't agree on that, it seems like. Is that true? The defendant has not expressly denied it. I don't want to use the word word games, but I don't know what other words to say to imply that they have not expressly denied drafting. Okay, thank you. Thank you. No other questions. Do you have anything else to add? Not at this time, thank you. Thank you, counsel. Happily, you may proceed. Thank you. May it please the court, I am Ian Fisher, a pond loger in Parks. I represent the appellee's defendants in this matter. My clients consist of Sprint Spectrum LP, or as it's referred to in the lease, SSLP, which was the original tenant under the lease. The three other entities I represent are, according to the plaintiff appellant, the successor tenants that stepped into the shoes of SSLP. Now, the lease premises in this case is a small piece of land on appellant's larger property. In the lease, it's defined as the premises. The appellant's land is defined as the land. The appellee's premises is just 38 feet by 50 feet, just large enough to contain a cellular tower. And that, in fact, is what it was used for. Now, the trial court found that the lease is unambiguous. It found that the defendant's appellees are only responsible for increases in the rent, in the taxes that are directly attributable to improvements on the property that is leased by the tenants. Now, the trial court's reading of the lease did, in fact, read Sections 8B and Sections 4 in harmony and gave meaning to each of them. I'd like to go through the sections. There are only three sentences each right now for the court. Section 8B begins by placing an obligation on the owner to pay all taxes, assessments, and the like when due. It then gives the tenant, SSLP, the right but not the obligation to pay such expenses if the owner fails to do so and then to deduct those amounts from the rent or to demand reimbursement from the owner. Turning to the second sentence of Section 8B, there's an exception to the directive that the owner bear all costs such as taxes. It specifically provides, I'm going to quote the sentence, quote, notwithstanding the foregoing, SSLP shall reimburse the owner within 30 days after the due date thereof any increase in real estate taxes on the premises directly attributable to improvement made by SSLP on the premises, close quote. Notably, this sentence twice specifies that SSLP's obligation is limited to the premises and not the land. Section 8B then concludes in the third sentence by placing responsibility on SSLP to pay any personal property taxes assessed on SSLP's PCS equipment, which is personal communication service equipment. Turning to Section 4, Section 4 generally identifies- Excuse me. Before you leave Paragraph 8, your argument about limiting, you agree this contract has to be read as a whole, right? Absolutely. In Paragraph 8A that you just referenced, it allows your client to actually move the premises wherever it needs to move it in order to be efficient. Would you agree with that? Under certain contingencies for condemnation or if there are issues where it can't transmit from the selected premises. Well, it says in Paragraph 8A, SSLP may at any time and from time to time relocate the land as reasonably necessary or appropriate to maximize its efficiency, et cetera, et cetera. So when you read that, it doesn't seem like your client is restricted to the 38 by 50 plot that you're talking about. I would argue that it's restricted to that size area necessary to build a cell tower. It can't just move around willy-nilly. It has to be driven either by condemnation or by another need, such as a hill were to be in the way or there would be some change in the land that would make receiving a cellular signal and retransmitting it difficult. Yes, it does give my client the ability to then move the cell tower to another portion of the land. Okay. You were going to go to Paragraph 4, I think. I am. And Section 4 or Paragraph 4 identifies when payments will be made and expresses the party's general intention that the lease is a gross lease, meaning that unless otherwise accepted, the owner is generally responsible for all expenses, including taxes. The first sentence of Section 4 establishes that rent is payable in advance annually each year. And I do want to apologize to the court. I quoted Section 4 in my brief and I omitted the first sentence, but it is in the attached lease to the record and to appellant's brief. The second sentence of Section 4 explains the party's overarching intent that the lease is a gross lease and that rent includes expenses such as maintenance, taxes, and insurance. The final sentence of Section 4, which is what the appellant relies upon, it addresses the timing of payments other than rent, specifically increases in taxes or insurance premiums. It states, as appellant said, quote, notwithstanding the foregoing, SSLP shall reimburse the owner within 30 days after the real estate tax and insurance premiums, close quote. This sentence properly is understood to refer to the timing of the payment. Use of the words notwithstanding the foregoing shows that it is an exception to the annual prepayment of rent. It's paid in arrears 30 days after demand from the owner. Now, notably, this sentence does not address anywhere or Section 4 what property it's referring to. It does not say what real estate property is taxed or is insured. That's because it's not necessary if it's only referring to the timing of a payment. Now, as Justice Cates brought up earlier, I'm sorry, Justice Cates, I apologize. As Justice Cates pointed out earlier, the court is to apply canons of contract construction, the first of which being that the contract should be construed as a whole. Now, the trial court below properly applied the canons of construction and these canons refute the appellant's contention that Section 4, quote, subsumes Section 8B. First, as taught by the Supreme Court in Thompson v. Gordon and endowed, endowed, limited v. Gleason, a case relied upon heavily by the appellant, a contract must not be read in a way that would render any term superfluous. Yet, this is exactly what the appellant asks the court to do by claiming that Section 4 subsumes Section 8B. Let me ask you a question, Mr. Fisher, the same one I asked of Mr. Magg, and that is, do you think that a gross lease only allows for payment of rent or is this really a modified gross lease? This would be a modified gross lease or not a pure gross lease. There is an adverb that goes before gross lease. I think that the article cited by appellant in his opening brief, understanding the modified gross lease actually explains that quite well and points out that a gross lease is generally understood by default to be where everything is on the owner except as otherwise identified by the specific terms of the contract, whereas a gross lease is generally understood to be where everything is on the other direction. That is interesting because in the first district in Chicago City Bank, there's the Siri Terminal, 1981, actually addressed this very issue and said that reference to a gross lease or net lease is not necessarily controlling, that the better approach is to read the terms of the lease themselves and to go with these specific terms over the general approach of being a gross lease or a net lease. That's one of the issues I'm having is that the trial court found this was a gross lease and seemed to rely on that fact in making its findings, whereas you've just So I am concerned about the trial court's order and language that was used by the judge and that he may have misinterpreted what is a gross lease versus a modified gross lease. So my question for you is, does it really matter in this case? It does not matter at all and I believe that the trial court was still correct. Now applying the canons of contract construction, we get to the exact same answer and I believe that's what the trial court did in stating that it was a gross lease that is not inconsistent with it being a modified gross lease versus a pure gross lease. And as the Chicago City Bank versus Siri Terminal teaches, you can have a gross lease and then have terms that remove it from being a pure gross lease and still be a gross lease. That the specific governs over the general, which is one of the three canons of contract construction that supports the trial court's ruling. Now I'd like to turn back to the understanding of the canon of contract construction that no case heavily relied on by the appellant, Dowd and Dowd from the Supreme Court. There, the Supreme Court found that the leasing question was not ambiguous and it did so and it reached its holding of no ambiguity by applying the canon of contract construction that, quote, courts will generally avoid interpretations that render contract terms surplusage, close quote. Again, this is what would have to occur in order to deem Section 8B to be subsumed by Section 4. Now the second canon of, or I guess the third canon of contract construction that I would like to address is the same one that I just mentioned before, which is a specific term in a contract trumps a general term. And that's not only in Chicago City Bank from the first Here, Section 8B is specific about what the tenant must pay. Tenant must pay increases in taxes on the premises directly attributable to improvements on the premises. Now, as I've mentioned earlier, Section 4 does not even identify the property that is taxed or insured. It is a general provision. Now this brings up a... Mr. Fisher, how does anybody know how much is due? Um, Mr. Maga was correct, largely correct, that the parties are able to determine that. If you look in the record at C-126, you will see an email from the assessor's office that gives the portion of the increases that are attributable to improvement. Specifically, they started, they attached 2013 through 2016, and the card shows what the actual values are due to improvements. Now unfortunately, the attachments that email are partially legible, we can't see the exact numbers, but the assessor's office does provide that information and in fact did provide it in this case. And I would point out... And the parties seem to have accepted that over the years at least. That is correct. There's no... I am unaware of any dispute as to what the amounts are in terms of what has been paid by the defendants under their interpretation of the contract. Because procedurally, Mr. Mag's brief at least asks for a remand for a hearing on what is due, and it seems as though the reason the case was parties agreed that if the contract is construed to mean only a portion is to be paid, then that amount has been paid. Is that your understanding procedurally? Yes, Your Honor, and I believe the briefing below bears that out. The parties disagree as to the categories that are due, but they agree that if the defendants are right, that that amount has been paid at least up to the latest demand. And could you address Justice Moore's question that he raised about the increase in assessment versus the increased tax rate and the increase in the multiplier? Yes, so the defendant's position is that only increases attributable to the improvement on the premises are owed by the defendants. So if there is an increase in value, as there was in 2013 that was attributable to the improvement of the premises, the building of the cell tower, that is owed by the defendants. If there is an increase in rate or multiplier, only the portion that relates to the improvement increase would be payable by the defendants. And that's under the specific provisions of Section 8B, which very clearly limit the responsibility of the defendants. And that's the number the assessor has been providing? Yes, that is my understanding. The email from the assessor states that it is providing the increase in real estate taxes due to the improvements. I am unaware, and there's nothing in the record, as to whether either of the other increases occurred and whether there was any discussion about calculating that. The record is just silent on that, and I do not know if that occurred or not. Well, the reason I asked about the dispute as to whether amounts have been paid, and Justice Moore's question is so important, is because the email that you refer to only begins in 2013. And this lease was before then, but it seems though everybody's in agreement before then, correct? Yes, Your Honor. There was, if we could read the following attachments, we would see that there was no increase in assessed value due to the improvements on the premises. I imagine it just took the assessor's office some time to get around to it. I do not know the reason and the record silent on why it took so long. It seems to me though that without some kind of ability to determine this, that the contract could be construed, I'm not saying it is, but it could be construed as ambiguous. Why would you disagree with that? A few reasons, Your Honor. First of all, to be ambiguous, it not only has to be capable of two interpretations, they must be reasonable. And here, an interpretation that the tenant of a 38 by 50 foot portion of a much larger land is responsible for any increase in real estate taxes or insurance premiums would be unreasonable. For example, Mr. Petrov could build a store on the far end of his property, and the increase in insurance and the increase in real estate taxes would be the responsibility of the tenant of the 38 by 50 foot parcel. That's not a reasonable interpretation. Second, even in the event of an ambiguity, I do want to address the point that the appellant made about construing against the drafter. There is no evidence at all in the record that addresses who drafted or negotiated the contract. Now it does appear that the original form of the contract came from my appellant had input to it. We find the appellant's address in there twice. We find the appellant's social security number is on it. We have no evidence whatsoever as to what negotiation or revisions took place. And so the record's been silent on that. Moreover, I do want to address the argument that that rule should be applied to construe against the drafter. As premier title, the first district recognized, it is not a rule of contract interpretation. Rather, it's a quote, rather courts will resort to a quote, only if we fail to ascertain the intent of the parties using ordinary principles of contractual interpretation, close quote. And the court goes on to note that it is a quote, a last resort, which may be invoked only after all the ordinary interpretive guides have been exhausted, close quote. So much like the Supreme Court did in Dowd and Dowd, application of canons of contract interpretation can lead to the conclusion that the contract is not ambiguous. In Dowd and Dowd, the court recognized that the other, that the plaintiff had asserted a different meaning that could be ascribed to the contract, but after applying the canons of contract interpretation, determined that there was no ambiguity. I submit that that is what the trial court did and that the trial court was correct in concluding that the contract was unambiguous. There are no other questions. I just ask that you affirm the judgment below. Thank you. One last question. I'm always the one. With regard to the term notwithstanding, the appellant said that that is the words notwithstanding are explanatory. They're not narrowing as you've argued. Let's see. It's been used. It says, let's see. It's not to, the function of a nonwithstanding clause is not to qualify or restrict the scope of the proceeding provision. Rather, it enumerates or designates the conditions in spite of which the provision is to apply. If I understand that argument correctly, notwithstanding the foregoing, says that despite the previous sentences in that section, in section four about timing, with regard to rent and insurance, increases in rent and insurance, those are payable in arrears 30 days after demand. It goes to timing. It's an exception to the annual prepayment. I would point out that section 8B, the sentence on which the defendants rely, also includes the exact same words, notwithstanding the foregoing. It's an exception to it being a gross lease and that all of the expenses are the owner's responsibility. It says, saying that just the increases in the real estate taxes attributable to improvements on the premises will be the responsibility of the tenant. Okay. Thank you so much. Counselor, your time is up and we have rebuttal. Counselor Mag, I don't know if you can hear me or not, rebuttal. Five minutes. There we go. Okay. Thank you. I would simply note that in paragraph 8B, it obliges the owner to pay all the taxes other things do on the land. And in the event that the owner fails to do so, it allows the defendant to do so. And then allow the deduction, much as in paragraph four. Mr. Mag, let me just ask you, what about the Appley's argument that you could build a pole barn on the property, improve the property, and under your construction, the cell phone folks would be liable for all that improvement? What would you say to that in your interpretation? First answer to that would be that there's no evidence that the plaintiff did build a pole barn or anything else. No, but hypothetically. Hypothetically, I understand. The real estate on which the cell tower is built, quite frankly, isn't really useful for much else other than a cell tower or probably growing some wheat or corn. It's not a highly desirable location, to be candid with the court. There really would be no reason why anybody would want to build anything next to the cell tower. Thus, it's kind of a red herring. Answer the question, no, counsel. Assume that they did, and it was, taxes were imposed because of it. How would that affect the lease? I think that the defendant would be obliged to pay the increase in real estate taxes under paragraph four of the contract. I think that if the defendant had qualms about doing that, they could have simply changed paragraph four of the contract to read differently, potentially how they drafted paragraph eight, but they didn't do that. And since they didn't do that, they're stuck with what they wrote. I mean, the parties can agree to contract a bad deal if the defendant didn't take something into account, and hypothetically, Mr. Petroff built the Taj Mahal next to this cell tower and increased the real estate taxes a thousand percent. It didn't happen, but arguably, the defendant would be liable for it. Do you think that the contract, the rule of construction that the appellee requires, can you hear me, Mr. May? Yes, your honor. Do you think that the rule of construction that the appellee requested us to consider, that is the reasonableness of the language of the contract in determining ambiguity, do you think that's a rule of construction under contract law? It can be, but I don't think in this case that they're bringing up a complete red herring. I can come up with a whole list of horribles too, based on their proposed language, none of which would be applicable. Their list of horribles doesn't apply to this case either. We've got vacant land with a cell phone tower sitting on it, the same as it was when the contract was originally signed, same as it was when the trial court ruled on it. As far as I know, it's the same as it is right now. If there's nothing further, I'd ask that the court to reverse and remand with instructions as we've discussed today. Thank you. The court will take the case under advisement and an order will be entered in due course. Thank you, counsel. You're both excused. Thank you, your honor. Thank you, your honors. Thank you, counsel.